*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. J. RHODES, Minor.

UNPUBLISHED
April 11, 2025
11:33 AM

No. 368624
Wayne Circuit Court
Family Division
LC No. 2022-001126-NA

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

In this child protective proceeding, the trial court found statutory grounds to terminate the parental rights of respondent-father to his minor child, JJR, but chose not to terminate respondent-father's parental rights because that was not in the best interests of JJR. On this appeal by leave granted,[1] petitioner argues that the trial court erred in finding that termination was not in JJR's best interests because the trial court incorrectly focused its best-interest analysis on respondent-father, rather than JJR, and ignored evidence indicating that termination was in the best interests of JJR. We agree, so we vacate the trial court's order finding that termination was not in the best interests of JJR and remand the case for proper consideration of JJR's best interests.

## I. FACTUAL BACKGROUND

On June 27, 2022, respondent-mother brought three-month-old JJR to the hospital after she found bruises on his body.[2] JJR had been in the care of respondent-father on the previous day, and respondent-father had acknowledged that bruising on JJR's lip was the result of the two of them bumping heads. But after careful inspection of JJR's body in the morning, additional bruises on

---

[1] *In re Rhodes*, unpublished order of the Court of Appeals, entered April 11, 2024 (Docket No. 368624).

[2] Respondent-mother has made significant progress toward reunification and is not a party in this appeal. Therefore, the only respondent in this appeal is respondent-father.

-1-

his ribs caused respondent-mother to worry. The hospital found evidence of multiple rib fractures in various stages of healing and a clavicle fracture that had no signs of healing, which was indictive of physical abuse.

In July 2022, Children's Protective Services submitted a petition asking that the trial court take jurisdiction over JJR and terminate the parental rights of respondent-mother and respondent-father.[3] Petitioner alleged that JJR was at substantial risk of harm in the care of both of his parents as a result of the suspected child abuse and improper supervision. The petition further stated that respondent-father has a lengthy criminal history, including a felony conviction for assault. At the time the petition was filed, respondent-father was still on probation for his felony conviction and had a warrant out for his arrest for a probation violation based on new criminal behavior.

During the preliminary hearing, the trial court heard testimony indicating that it would be contrary to JJR's welfare to remain in the care of his parents because of the nonaccidental injuries he sustained while in their care and the fact that neither parent provided an alternative explanation for JJR's injuries. The trial court authorized the petition, finding it was clearly contrary to JJR's welfare to remain in the care of his parents because he would be at imminent risk of harm in their care. The trial court took jurisdiction over JJR, placed him with his maternal aunt, and suspended respondent-father's visitation with JJR. Eventually, however, the trial court reinstated supervised parenting-time visits for respondent-father at petitioner's agency.

At subsequent adjudications, both parents pleaded no contest for civil and criminal liability reasons to jurisdiction and to statutory grounds for termination. The trial court accepted the pleas and found that statutory grounds for termination existed. During a best-interest hearing involving respondent-father that occurred on October 10, 2023, the trial court admitted a Best Interest Clinic report and heard testimony concerning JJR's injuries, respondent-father's participation in the court proceedings, the relationship between respondent-father and JJR, and respondent-father's minimal involvement in parenting-time visits.

On the basis of that evidence, petitioner claimed it was in JJR's best interests to terminate respondent-father's parental rights because, although he expressed a desire to be involved in JJR's life and participated in some services, the record showed that JJR sustained multiple, nonaccidental injuries indicating child abuse, respondent-father made inconsistent statements about the cause of JJR's injuries, and the Best Interest Clinic report recommended termination. Further, respondent-father failed to cooperate with the case worker and there was no indication that his parenting ability had improved over the course of his sporadic parenting-time visits with JJR. The lawyer-guardian ad litem (LGAL) agreed, noting that out of the 120 hours of parenting time offered to respondent-father, he participated in only 20 hours. The LGAL also claimed that termination was appropriate because no bond existed between respondent-father and JJR. In contrast, respondent-father argued that termination was not in JJR's best interests because there was no evidence proving respondent-father caused JJR's injuries, respondent-father acted appropriately during his parenting-time visits, he was not given a treatment plan, and he had no history of being a threat to JJR or other children.

---

[3] Respondent-father also has two other children from previous relationships who were not involved in these child protective proceedings.

The trial court found that termination was not in JJR's best interests because JJR was placed with respondent-mother and doing well in her care, so the court was persuaded that respondent-father "wants to be a positive influence in his, his son's life[.]" Thus, the court ordered respondent-father to participate in a treatment plan. This appeal now follows.

## II. LEGAL ANALYSIS

Petitioner insists that the trial court erred by finding that termination was not in JJR's best interests because it incorrectly focused its best-interest analysis on respondent-father, not JJR. We review for clear error a trial court's finding whether termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). A "preponderance of the evidence" means evidence of a proposition that, when weighed against all the evidence opposed to the proposition, "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). The focus of the best-interest determination is on the child, not on the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

In deciding whether termination of parental rights is in the best interests of a child, the trial court should consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other relevant considerations are "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. "A child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). Placement with a relative weighs against termination, but it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43.

The record shows that JJR was removed from respondent-father's care after skeletal exams revealed "multiple rib fractures in multiple healing stages as well as a left clavicle fracture" and a classical metaphyseal lesion in his femur. JJR's doctors determined that his injuries were the result of "nonaccidental trauma[.]" Respondent-father has continued to maintain that JJR's injuries were accidental and has refused to accept responsibility for his actions regarding the events that caused his son to be removed and placed in care. Additionally, at the time of the best-interest hearing, respondent-father was still on probation after he failed to pay restitution.

-3-

Throughout the proceedings, respondent-father consistently did not cooperate with the case worker. For instance, the case worker was unable to verify respondent-father's housing, he refused to allow the case worker to perform a home visit, and he failed to provide any evidence of his new employment. Nor did respondent-father offer any verification that he voluntarily participated in parenting-education classes, mental-health services, or domestic-violence programs, although he claimed he had completed parenting classes and domestic-violence programs and had met with a psychologist. After respondent-father was given supervised parenting time, he failed to reach out to the case worker to establish a parenting-time schedule and often canceled parenting-time visits because he had other obligations. Once the parenting-time schedule was established, respondent-father was allowed to participate in parenting time every Friday for two hours. But he only elected to spend one hour with JJR, claiming his work schedule prevented him from having longer visits. The case worker made efforts to accommodate respondent-father's work schedule, but respondent-father did not consistently attend parenting time. He attended 20 of the 60 parenting-time visits. Consequently, the case worker described respondent-father's involvement with JJR as "minimal" and inconsistent.

The evidence regarding the bond between JJR and respondent-father is murky. The author of the Best Interest Clinic report stated that, during her observation of respondent-father and JJR, "their interactions appeared somewhat attached and bonded," and respondent-father did not exhibit any inappropriate parenting. The case worker reported that respondent-father was appropriate and tried to engage with JJR at the visits she supervised, but he did not bring supplies to care for JJR. JJR did not engage with respondent-father during visits and initially cried "very hysterically during the entire hour," prompting social workers to step in to help soothe him. The case worker did not believe respondent-father's relationship with JJR improved over time and opined that respondent-father had no bond with JJR because JJR did not reach out for him or engage with him. In contrast, respondent-father commented that his visits with JJR "went great" and he brought gifts for JJR's birthday. Respondent-mother stated that, when she was living with respondent-father, he was "an excellent father," and since JJR was returned to her care, respondent-father sent money and diapers "a couple times," and contacted her one to two times each week about JJR. But she did not believe that respondent-father and JJR had a bond. In sum, the evidence suggests that if there was a bond between JJR and respondent-father, it was not particularly strong.

Undoubtedly, the fact that JJR was in respondent-mother's care and she was providing him with permanence and stability weighed against termination. Although JJR was quite young when he was placed in petitioner's care, the lack of a bond appears largely attributable to respondent-father's failure to consistently and substantially participate in parenting time or develop parenting skills. Respondent-father also failed to communicate or work with the case worker throughout the proceedings. Most importantly, respondent-father offered conflicting stories about JJR's injuries while continuously maintaining that the injuries were accidental despite the fact that JJR's medical records showed that the injuries were severe, nonaccidental, inconsistent with a fall, and consistent with physical abuse.

In ruling that termination of respondent-father's parental rights was not in the best interests of JJR, the trial court considered the fact that JJR was placed with respondent-mother, finding that he was doing well in her care, so there would be no need for adoption. But while the trial court expressed concern about respondent-father's "spotty" participation in supervised parenting time, it found termination was not in JJR's best interests because it was "persuaded that there's enough

here that [respondent] wants to be a positive influence in his, his son's life[.]" Because the trial court's findings improperly focused on respondent, rather than JJR, the trial court committed clear error in its best-interest analysis. See *In re Schadler*, 315 Mich App at 411.

Having found clear error, we must determine the appropriate remedy on appeal. Although petitioner demands reversal of the trial court's decision concerning the best interests of JJR, entry of such an order does not dictate whether the trial court should be afforded the opportunity to again conduct a best-interest analysis. We conclude that the trial court's flawed analytical approach led to the flawed outcome we have identified, so the most appropriate remedy is to vacate the decision of the trial court concerning the best interests of JJR and remand the case for further consideration of whether termination of respondent-father's parental rights is in the best interests of JJR. When the trial court engages in this analysis, it should go through each of the best-interest factors, making findings from JJR's perspective as to whether each factor weighs against or in favor of termination of respondent-father's parental rights.[4]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

---

[4] This Court has provided the following extensive list of best-interest factors:

> In determining the child's best interests, a trial court may consider a variety of factors including the parent's history, unfavorable psychological evaluations, the child's age, inappropriate parenting techniques, and continued involvement in domestic violence. A trial court may also consider the strength of the bond between the parent and child, the visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being while in care, and the possibility of adoption. A trial court may also consider the child's need for permanence and the length of time the child may be required to wait for the parent to rectify the conditions, which includes consideration of the child's age and particular needs. [*In re Balkin*, unpublished per curiam opinion of the Court of Appeals, issued May 10, 2012 (Docket No. 307161), p 6 (citations omitted).]